Lila M. ADAMS, as personal representative of the Estate of Wallace J. Adams, Jr., deceased, by substitution, Plaintiff-Appellee,

v.

FRONTIER AIRLINES FEDERAL CREDIT UNION, Defendant-Appellant.

No. 82CA0857.

Colorado Court of Appeals, Div. I.

June 21, 1984.

As Modified on Denial of Rehearing July 19, 1984.

Certiorari Denied Nov. 26, 1984.

Hart & Trinen, Donald T. Trinen, Stephanie M. Smith, Denver, for plaintiff-appellee.

Berkley Rasband, P.C., Berkley Rasband, Englewood, David Worstell, Neal Dunning, Louis A. Weltzer, Denver, for defendant-appellant.

STERNBERG, Judge.

Wallace J. Adams, Jr., after being discharged from his job as executive director of the defendant, Frontier Airlines Federal Credit Union, sued for breach of an employment contract. Following a jury trial, Adams was awarded $109,195 actual damages and $150,000 damages for mental anguish as a result of the breach. Adams died after the trial. His widow, Lila M. Adams, appears in this appeal as personal representative of his estate by substitution. The Credit Union appeals, and we affirm in part and reverse in part.

In 1980, after eleven years of employment with the Credit Union, Adams and the Credit Union entered into a written employment contract. The contract, which provided for Adams' continued employment as executive director for at least three years, together with fringe benefits he had previously received, was adopted by the Board in February 1980 with one Board member voting against the contract. Shortly thereafter, two others who opposed the granting of the contract were elected to the seven member board, and friction began to develop between Adams and these three Board members. Eventually Adams resigned as Board member and Treasurer of the Credit Union, but continued as executive director.

Subsequently, the three Board members who supported Adams moved to buy out the remainder of his contract. The motion failed, but the other Board members sought to have Adams fired as executive director of the Credit Union. In February 1981, with two years remaining on the employment contract, Adams was fired for incompetence and was paid ninety days salary.

Adams eventually worked for Sperry Federal Credit Union for a short time, and was employed as a consultant for the Professional Rodeo Cowboys Association at the time of trial.

I.

The Credit Union's first contention is that Adams' employment was properly terminated under the terms of the contract. The provisions of the contract lead to a contrary conclusion.

The contract provided that Adams could be terminated without cause by notice in writing given at least ninety days before the expiration date of the employment

agreement. Also, it provided that the Credit Union could terminate Adams at any time by giving him notice of termination and paying his salary for the remaining contract period.

In addition, the employment contract made provision for termination for cause, *i.e.,* if Adams did not perform his job in a faithful and competent manner or if he became mentally or physically incapable, he could be terminated by two-thirds vote of the Board of Directors. In the case of such termination he would be entitled to be paid for ninety calendar days of work together with accrued vacation pay.

The Credit Union argues that because the Board terminated Adams' contract by two-thirds vote and found him to be incompetent there was no breach of contract. It asserts that its finding of incompetency was based on competent evidence and was therefore determinative of that issue. We do not agree.

■ Since the Board premised its defense to this breach of contract action on its contention that it had discharged Adams for incompetency, the ultimate determination of whether Adams' performance was incompetent was a question of fact to be determined by the trier of fact, not the Board. *See Little Thompson Water Ass'n v. Strawn,* 171 Colo. 295, 466 P.2d 915 (1970); *Bator v. Mines Development, Inc.,* 32 Colo.App. 320, 513 P.2d 220 (1973). And, there being competent evidence in the record to support the jury's findings in this regard, they are binding on review. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981).

## II.

The Credit Union next contends that if it was not justified in terminating Adams' employment for lack of competence, he was entitled to recover only his salary for the remainder of the contract, and not the fringe benefits. We disagree.

■ We note initially that the Credit Union raised this issue for the first time on review, and, absent plain error, which de-

prives a litigant of fundamental rights, we may not consider it on appeal. *Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969). However, we hold that there was no error, plain or otherwise.

■ The general measure of damages for breach of contract is that sum which places the non-defaulting party in the position that party would have enjoyed had the breach not occurred. *Taylor v. Colorado State Bank,* 165 Colo. 576, 440 P.2d 772 (1968); *Kniffin v. Colorado Western Development Co.,* 622 P.2d 586 (Colo.App. 1980). Damages are awarded in contract disputes to make the non-breaching party whole. *Taylor v. Colorado State Bank, supra; Kniffin v. Colorado Western Development Co., supra.*

■ The employment contract provided that Adams would receive specified salary plus other benefits including pension contributions; life, health, and dental insurance; and use of an automobile. Adams testified at trial regarding these benefits and their value to him. Had the Credit Union not breached the contract, Adams would have been entitled to these benefits. Hence, if Adams' damages had been limited to his salary for the remainder of the contract, he would not have been made whole. *See Taylor v. Colorado State Bank, supra; Kniffin v. Colorado Western Development Co., supra.*

## III.

We do, however, agree with the Credit Union that the portion of the judgment allowing recovery for mental anguish resulting from the breach cannot stand. We reverse this award on the basis of an improper jury instruction.

■ Pecuniary loss as the result of a breach of contract almost invariably causes some form and degree of mental distress. However, the traditional rule is that mental anguish which results solely from pecuniary loss following a breach of contract is not recoverable. *D. Dobbs, Remedies* § 12.4 at 819 (1973).

■ There presently exists certain exceptions to this traditional rule. First, a plaintiff may recover for mental anguish if he shows that defendant's outrageous conduct accompanying the breach could have been the basis of an independent tort claim for negligent or intentional infliction of emotional distress. Second, a plaintiff may recover such damages if he shows a breach of a limited class of contracts of a personal or special nature, in which case proof of defendant's conduct is not a factor. *Trimble v. City & County of Denver*, 645 P.2d 279 (Colo.App.1981) (*cert. granted* May 10, 1982). Also, a non-breaching party to a contract may recover damages for mental anguish alone when the breach is accompanied by willful and wanton conduct. *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App.1982) (*cert. granted* January 17, 1983).

■ Here, the jury was instructed that if it found the Credit Union's breach to have been willful and wanton, then it should award damages for mental suffering, if any. However, it was also instructed over objection that if Adams had proved actual damages, then he was entitled to be reasonably compensated for mental suffering, if any, if such mental suffering was *a natural and probable consequence of the breach of the contract.*

This latter instruction is an incorrect statement of the law regarding recovery for mental anguish as the result of a breach of contract. Our law does not allow recovery for the mental distress that follows a pecuniary loss absent other factors enumerated above. Hence, the trial court erred in giving this instruction to the jury.

The verdict does not inform us of the theory upon which the jury awarded damages for mental anguish. The trial court offered the parties an opportunity to submit a special interrogatory which it would consider giving to the jury to make clear which of the two bases it used in the event it awarded damages for mental anguish. Neither party did so. Thus we cannot tell whether the jury based its award on the proper instruction predicating damages for mental anguish on a finding of a willful and wanton breach, or on the improper instruction allowing such award if the damages were a natural and probable consequence of a breach of the contract. Therefore, the error in giving the later instruction requires reversal. *See Fox Colorado Theater Co. v. Zipprodt*, 89 Colo. 446, 3 P.2d 798 (1931).

## IV.

The Credit Union next argues that the trial court erred in not permitting testimony concerning the reason for Adams' termination of employment at the Sperry Federal Credit Union. We do not agree.

■ We first note that the Credit Union did not make an offer of proof when the testimony was not permitted to be introduced. CRE 103(a)(2). However, apparently the witness would have testified that Adams was terminated because he was not competently performing his job. The trial court refused to permit such testimony because it involved a collateral matter and because its relevance would be outweighed by the prejudicial nature of the evidence and would result in a waste of the court's time. A trial court has broad discretion in receiving or rejecting evidence on relevancy grounds. CRE 403. *People v. Lowe*, 660 P.2d 1261 (Colo.1983). We find no abuse of discretion.

The Credit Union's other allegations of error are without merit.

The judgment is affirmed in all respects, except as to the award of damages for mental anguish as the result of the breach of contract, and the cause is remanded for a new trial on this issue.

PIERCE and BABCOCK, JJ., concur.